## Terhune v. Louisville & Nashville Railroad Company.

(Decided June 10, 1919.)

### Appeal from Shelby Circuit Court.

1.  Railroads—Fires—Combustibles Near Railroad.—It is the duty of a railroad company to keep its right of way clear and free from weeds, high grass and decayed timber which, from their nature and condition, are combustible material, liable to take and communicate fire from passing trains to abutting and adjacent property, and if such company fail to perform this duty and an otherwise harmless spark from one of its engines fall upon such combustible matter upon its right of way, ignite it and cause fire to spread to adjacent property, the company must respond in damages for the loss occasioned by the conflagration, even though its engines be equipped with spark arresters of the latest and most scientific pattern in common use and these screens be properly adjusted, and the trains prudently operated.

2.  Railroads—Fires—Combustibles Near Railroad.—A railroad company is liable for damage caused by fire originating from its engines (1) if it fail to have its smoke stack equipped with spark arresters of the most modern type, in practical use, (2) if it fail to keep such spark arresters properly adjusted, (3) if it operate its trains in a negligent manner so as to cause the engines to emit

live sparks and cinders, (4) if it allows combustible matter to accumulate and remain upon its right of way in violation of section 790, Kentucky Statutes; and where the facts proven upon the trial indicate that the engine was not properly equipped with spark arresters or that the same were not properly adjusted, and further that the right of way was covered with combustible matter, each of these theories should be presented in the instructions of the court to the jury.

3. Trial—Pleading—Instructions.—Where the matter is properly pleaded and there is evidence tending to support the pleading, the instructions of the court to the jury should cover the subject.

RALPH GILBERT and BARRICKMAN & KALTENBACHER for appellant.

WILLIS, TODD & BOND for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

Terhune's house was destroyed by fire about two o'clock on the night of November 7, 1915, and this action was instituted by him against the Louisville & Nashville Railroad Company and the Chesapeake & Ohio Railroad Company, to recover $500.00 for the destruction of the building, $640.00 for destruction of the household goods and furniture in the house, and $900.00 for the destruction of a threshing machine and other farming implements stored in the building, upon the grounds that the fire was started by the railroad companies in one of three ways: (1) operating their engines without equipping them with spark arresters as provided by statute; (2) in otherwise negligently operating and managing their engines; (3) negligently allowing combustible material to accumulate and be upon the right of way. The defendants filed separate answers traversing the allegations of the petition. A trial before a jury resulted in a verdict in favor of the defendants railroad companies, and Terhune prosecutes this appeal.

He filed motion and grounds for a new trial in which he set forth the following reasons why his motion and grounds should prevail: (1) Because the court erred in giving instructions Nos. 1, 2 and 3 and to the giving of each the plaintiff excepted at the time and still excepts; (2) because the court erred in refusing to give instructions Nos. 4 and 5 offered by plaintiff, to which ruling of the court plaintiff objected and excepted; (3) because the verdict is not sustained by sufficient evidence. We will consider these objections in the order named:

(1)  Instruction No. 1, directed the jury to find for the plaintiff Terhune if his house was ignited by sparks from the engines, if the said engines were not at the time equipped "with the best screens, or spark arresters known to science, in practical use, for preventing the escape of sparks" and same were not kept in perfect order. This instruction properly presented one phase of the case, as we understand the facts, for if the appellant's house was set on fire by sparks emitted from the smoke stack of an engine of the railroad companies which was not properly equipped with screens or spark arresters, such as prescribed by statute, then the company was liable to Terhune for the loss of his property by fire. But this instruction did not cover the whole law of the case, according to plaintiff's version of the facts. Instruction No. 2 covers another phase of the case. It directed the jury in substance to return a verdict for plaintiff, Terhune, although sufficient spark arresters were attached and properly adjusted to the engines, if the jury believed from the evidence that the agents and employes of the railroad companies "so negligently operated or managed said engines as to cause sparks to be emitted from same," which ignited the house of plaintiff. Instructions Nos. 1 and 2, considered together, failed to present the whole law of the case applicable to the facts and for a better understanding of the reasons why the court should have given an additional instruction presenting another theory of plaintiff's case, we will briefly state the facts; Terhune's house stood within about 40 to 50 feet of the railroad track; it was a new house, built of oak lumber but not painted. The railroad tracks ran back of the house, and there was more or less combustible matter, according to the evidence for plaintiff, allowed to accumulate on the right of way just back of the premises of Terhune. In addition to this, there was a pile of slabs or old lumber laying near the right of way and between it and the house of Terhune.

There was also a fence between the right of way and Terhune's lot. The weather was extremely dry and the grass and vegetation was seared and inflammable. On the night of the fire an engine and train drew up alongside of Terhune's property and was emitting large live sparks and cinders about twenty-five minutes before one o'clock.  The fence on the right of way next to the Terhune house burned before or during the fire, and

it is argued by appellant that this combustible material
first took fire from the sparks from the engines and burn-
ed over on to Terhune's lot, into the slab pile and to the
house, causing its ignition and destruction. There is a
sharp conflict in the evidence as to whether the whole or
only a part of the surface of the right of way next to
Terhune was burned over, and if burned over, whether
before the fire was discovered in the house or afterwards,
and as a result of the heat and fire from the house. The
grass and inflammable material on the right of way was
burned away in part, but just how much we are unable
to tell, because there is no map in the record indicating
the burned area, but the conflict in the evidence is largely
confined to the time that this material was burned from
the right of way, whether before the fire started in the
house or afterwards. The appellant Terhune contends
that the burning of the grass from the right of way oc-
curred before and during the burning of the house and
that the ignition of the grass on the right of way was
the direct cause of the destruction of his property. While
the railroad companies contend that the fire which de-
stroyed the house originated inside of the house and
that the grass was not burned from the right of way until
after the house was on fire, and that the fire from the
house spread to the grass and slab pile.

(2) As there is admitted to have been combustible
material on the right of way of the railroad company
adjacent to the property destroyed, and as there was
some evidence tending to show that the fire started in
this inflammable material and later reached the house,
the trial court should have submitted that phase of the
case to the jury by proper instructions, as it was suffici-
ently alleged in the petition. As said in the case of Ohio
& Kentucky Railroad Company v. Whitt, 180 Ky. 421;
"in allowing filth to accumulate upon the right of way,
the railroad company was negligent; it violated the
statute, and while it would not ordinarily be liable for
damage resulting from sparks emitted from its engine,
properly equipped with spark arresters, operated with
reasonable care, it is liable for resulting damage to ad-
jacent property arising from an otherwise harmless
spark emitted from its smoke stack through a properly
adjusted and sufficient spark arrester from a train under
proper control if the spark fell upon inflammable filth
and combustible matter negligently allowed to accumu-

late and be upon its right of way." Although the jury
may have believed from the evidence that the spark ar-
resters were in all respects sufficient and were properly
adjusted on the smoke stack of the engine, and that the
train was otherwise operated with reasonable care, yet
if the right of way "was not clear and free from weeds,
high grass, and decayed timber which, from their nature
and condition, are combustible material, liable to take
and communicate fire from passing trains to abutting
or adjacent property," and an otherwise harmless spark
from the engine fell upon such combustible matter,
ignited it and caused the conflagration, the railroad com-
panies were responsible to Terhune for the loss of his
house and personal property. This theory of the case,
however, was not presented by the court to the jury in
any of the instructions given, but it was contained in
instruction No. 4, offered by appellant and rejected by the
court; and this instruction, or one more concisely drafted,
presenting this theory of the case should have been given.

There is some objection to instruction No. 3, the
measure of damages, but we are of opinion that this in-
struction fairly presents the measure of compensation
to which Terhune was entitled, if any.

(3)   The objection that the verdict is not sustained
by the evidence could not avail, but inasmuch as the case
was not submitted to the jury by proper instructions, a
new trial must be had. We are strongly inclined to the
opinion that the weight of the evidence supports the ver-
dict. However this may be, upon another trial when the
facts are properly submitted to the jury, it will weigh
the evidence and its verdict will be conclusive on the
facts.

Upon a retrial of the case the court will instruct the
jury as indicated herein.

Judgment reversed.