Harold TURNER, Appellant,

v.

BLUEGRASS TIRE CO., INC.; Honorable Grant Roark, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 2009–SC–000653–WC.

Supreme Court of Kentucky.

Aug. 26, 2010.

David R. Marshall, Lexington, KY, Counsel for Appellant, Harold Turner.

Kamp Towsend Purdy, John D.T. Brady, Ferreri & Fogle, Lexington, KY, Counsel for Appellee, Bluegrass Tire Co., Inc.

## OPINION OF THE COURT

An Administrative Law Judge (ALJ) dismissed the claimant's motion to reopen his workers' compensation claim on the ground that he failed to make a *prima facie* showing of fraud to justify reopening. The Workers' Compensation Board affirmed. The Court of Appeals also affirmed, finding no abuse of the ALJ's discretion because the evidence supporting the motion failed to make the required *prima facie* showing of fraud, mistake, or newly-discovered evidence.

Appealing, the claimant asserts that he was entitled to reopen because he supported the motion with newly-discovered evidence that called the. truthfulness of a material witness into question.

We affirm. Even if we were to assume for the purpose of discussion that the claimant supported the motion with what KRS 342.125(1) considers to be newly-discovered evidence, the evidence failed to show a substantial possibility that he would be able to prevail on the merits.

The claimant began working for Bluegrass Tire Company, Inc. in 1992 as a mechanic, which required him to crouch, stoop, bend, and crawl on a concrete garage floor. He underwent arthroscopic surgery on his left knee in October 2006 and returned to work after two weeks. He also had partial knee replacement sur-

gery in May 2007, but his job had been terminated when he recovered from the procedure. He filed a workers' compensation claim in September 2007, alleging a cumulative trauma injury to his left knee. Bluegrass Tire denied the claim on multiple grounds. Among the contested issues was whether the claimant gave timely notice of the injury.

Medical records indicated that the claimant sought medical treatment in April 2006 for bilateral knee pain. X-rays revealed mild osteoarthritic changes in the left knee and his medical records noted a history of degenerative joint disease. His left knee pain continued in August 2006, at which time an MRI revealed a tear in the medial meniscus and other abnormalities. Dr. Bailey noted that the claimant had "chronic wear and tear type injuries from positional changes at work;" that he "has had some twisting injuries at work;" and that a non-work-related left knee injury in 1991 was a simple sprain that did not contribute to his present condition. A note from August 30, 2006 stated that the claimant injured his knee while working.

The claimant testified that a physician first informed him his left knee condition was work-related in August 2006, at which point he reported the condition to his supervisor, Randy Richards, and gave him a "form" from Dr. Bailey. The claimant also testified that when Richards asked him if this was a workers' compensation "deal," he responded "well, right now, I'm just going to get my knee fixed and we're going to go from there. I don't know what to do." He was then asked whether he told Richards specifically that his left knee condition was work-related. He responded, "I didn't come out and say it, but we both, he knew that."

Richards testified that he knew about the claimant's knee problems and surgeries but did not know that they were work-related until recently. Gary Duff, the owner of the business, testified that he first learned that the claimant alleged a work-related injury when the Department of Workers' Claims informed him that the claim had been filed.

The ALJ dismissed the claim on June 20, 2008, having concluded that the claimant sustained a work-related injury but that notice given with the claim was untimely under the circumstances. The ALJ noted that although the claimant knew the cause of his injury by August 30, 2006, the parties presented conflicting evidence concerning the date when he informed his employer of that fact. The ALJ also noted that although he testified to doing so in August 2006, he failed to inquire subsequently why his medical bills were not being paid. Moreover, both Richards and Duff denied receiving notice until after the claim was filed. The ALJ concluded that the claimant failed to give notice before filing an application for benefits on September 13, 2007, which was untimely.

The claimant filed a motion to reopen in October 2008 based on fraud, mistake, and newly-discovered evidence with respect to notice. He tendered with the motion the sworn statement of former Bluegrass Tire employee, Christopher Breeze, regarding a conversation that Breeze allegedly witnessed between the claimant and Richards concerning the injury. The claimant also tendered his own affidavit stating that he told Breeze during "a chance encounter" in August 2008 that his claim had been dismissed because Richards denied receiving notice that his injury was work-related. He stated that, to his surprise, Breeze told him that he had witnessed the August 2006 conversation in which he notified Richards and offered to give a sworn statement describing it.

Breeze's statement indicated that he worked at Bluegrass Tire as a sales clerk

from March 2006 through early 2008; that he worked with the claimant for a year and a half; and that they became friends. He stated that while standing behind the counter sometime in August 2006 he saw the claimant and Richards standing near the front door. The claimant handed a piece of paper to Richards and said, "The doctor found that it was work-related." When Richards asked what he was going to do, the claimant responded that he was unsure. Richards then stated that he would put the paper in the claimant's personnel file. According to Breeze, Richards and Duff talked on subsequent occasions about the claimant's "situation."

The employer argued that Breeze's testimony was not newly-discovered evidence for the purposes of KRS 342.125(1); did not show conduct that rose to the level of fraud; and failed to show a mistake. Moreover, Breeze was not a neutral third party because he considered himself to be the claimant's friend and, like the claimant, no longer worked for the employer.

An ALJ denied the motion, noting that the supporting evidence contradicted Roberts' testimony but failed to constitute a *prima facie* showing of fraud. The order contained no specific findings regarding mistake or newly-discovered evidence and the claimant requested none.

Appealing, the claimant asserted that KRS 342.125 entitled him to reopen because he offered newly-discovered *prima facie* evidence of his employer's fraudulent or at least mistaken testimony in the initial proceeding regarding notice. He argued that Breeze's statement was newly-discovered because he was unaware that Breeze had witnessed his conversation with Richards and because due diligence did not require him to interview every co-employ-

ee at the time of the initial proceeding. He argued that the ALJ failed to apply the proper standard when considering the motion and disregarded the fact that his evidence raised doubts about the truthfulness of Richards, who was a material witness. The claimant maintained that Breeze was a neutral third party; that his statement contradicted the testimony of Richards; and that it justified further proof taking.

■ Proceedings under Chapter 342 are adversarial. Final workers' compensation awards, like other judgments, are subject to the doctrine of finality.[1] The doctrine precludes further litigation of issues that were decided on the merits in a final judgment in instances where there is an identity of parties and an identity of causes of action. The principle supporting the doctrine is that litigation should end when the rights of the parties have been finally determined.

The claimant's argument relies on *Bedingfield v. Commonwealth*,[2] which was decided under RCr 10.02. RCr 10.02 permits a new trial "for any cause which prevented the defendant from having a fair trial, or if required in the interest of justice." The court determined in *Bedingfield* that justice demanded a new trial because improved DNA technology that was unavailable when the defendant was tried for rape subsequently excluded him as the source of semen from the victim's vaginal swab and clothing. The court reasoned that the DNA evidence warranted a new trial because it substantially impacted the credibility of testimony from the victim and the eyewitness, both of whom already had "serious credibility problems," and would probably change the result on retrial.

---

1. KRS 342.305.

2. 260 S.W.3d 805, 813 (Ky.2008).

KRS 342.125(1) permits a final workers' compensation award to be re-opened and modified on four specified grounds. The claimant's motion included fraud, mistake, and newly-discovered evidence. A motion to reopen based on one or more of these grounds is in effect a request for a new trial and, thus, is governed by the criteria for granting new trials under CR 60.02.[3] A new trial request may not be granted under CR 60.02 if based on new evidence that could and should have been discovered and produced in the initial trial.[4] Each party to a cause of action must, therefore, exercise due diligence in discovering and introducing evidence sufficient to prove its case *before* the matter is submitted for a decision.

As used in KRS 342.125(1), "newly-discovered evidence" refers to evidence existing at the time of the initial proceeding that the moving party did not discover until recently and with the exercise of due diligence could not have discovered during the pendency of the initial proceeding.[5] Moreover, the evidence must not be merely cumulative or impeaching but must be material and, if introduced at reopening, probably result in a different outcome.[6]

In *Durham v. Copley*,[7] for example, the employer's insurance carrier obtained evidence during the pendency of Durham's claim indicating that his work caused an injury of which Durham and his attorney were unaware. The carrier failed to reveal the evidence until seven weeks after an ALJ dismissed the claim, at which point Durham's attorney moved to reopen on the grounds of mistake and/or newly-discovered evidence. Holding that it was "egregious error" for the ALJ not to reopen under the circumstances, the court noted that the reason Durham could not produce the report before the dismissal of his claim was both "obvious and compelling."[8] Only if evidence is classified properly as being newly-discovered does the question of its decisive effect arise.[9]

A *prima facie* showing adequate to support granting a motion to reopen need not be sufficient to support a finding for the movant on the merits in the event that the respondent fails to go forward with evidence to the contrary.[10] The standard for deciding the motion is whether the movant has made a preliminary showing of the substantial possibility of proving one or more of the prescribed conditions sufficient to justify putting the adversary to the expense of re-litigation.[11] The standard for review on appeal is whether or not the decision was an abuse of the ALJ's discretion because it was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles."[12]

---

3. *Wagner Coal & Coke Co. v. Gray*, 208 Ky. 152, 270 S.W. 721 (1925); *Keefe v. O.K. Precision Tool & Die Co.*, 566 S.W.2d 804 (Ky.App. 1978).

4. *Id.* at 722.

5. *Russellville Warehousing v. Bassham*, 237 S.W.3d 197 (Ky.2007). *See also, Commonwealth v. Harris*, 250 S.W.3d 637 (Ky.2008).

6. *Hopkins v. Ratliff*, 957 S.W.2d 300 (Ky.App. 1997).

7. 818 S.W.2d 610 (Ky.1991).

8. *Id.* at 612.

9. *See Walker v. Farmer*, 428 S.W.2d 26 (Ky. 1968).

10. *See Crawford & Company v. Wright*, 284 S.W.3d 136 (Ky.2009).

11. *Stambaugh v. Cedar Creek Mining Co.*, 488 S.W.2d 681, 682 (Ky.1972).

12. *Hodges v. Sager Corp.*, 182 S.W.3d 497, 500 (Ky.2005); *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999).

The claimant failed to request specific findings concerning whether Breeze's testimony was newly-discovered for the purposes of KRS 342.125(1) or constituted a *prima facie* showing of mistake. In any event, the ALJ could have concluded reasonably that the claimant failed to exercise due diligence; that Breeze's testimony was essentially of an impeaching nature; and that the testimony was not so compelling that it probably would have changed the outcome. Thus, we are not convinced that the ALJ would have abused his discretion had he made a specific finding that denied the motion on either ground.

Even if we were to assume for the purpose of discussion that Breeze's statement came within the legal concept of newly-discovered evidence, we are not convinced that it warranted reopening. The ALJ denied the claimant's motion based solely on the lack of a *prima facie* showing of fraud. The decision was not an abuse of discretion because Breeze's statement contradicted Richards' testimony but failed to show that Richards intentionally misrepresented the facts concerning notice. Thus, the statement failed to show a substantial possibility that the claimant could prevail on the merits.

The decision of the Court of Appeals is affirmed.

All sitting. All concur.